```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :
                                 :     INFORMATION
        -v.-                     :
                                 :     13 Cr. ___
JASON KONIOR,                    :
                                 :     13 CRM 275
        Defendant.               :
                                 :
- - - - - - - - - - - - - - - - x
```

**ORIGINAL**

## COUNT ONE

(Wire Fraud)

The United States Attorney charges:

**The Defendant and Other Relevant Entities**

1.  At all times relevant to this Information, JASON KONIOR, the defendant, was the founder of various corporate entities, all of which had their principal place of business in Manhattan. KONIOR was the managing general partner and investment advisor of Absolute Fund Advisors, LLC ("AFA"), which was a New York limited liability company. KONIOR also was the principal manager and member of Absolute Fund Management, LLC ("AFM"), which was a New York limited liability company. AFM was a general partner and investment manager of "Absolute," which was a New York limited liability partnership. For purposes of this Information, these entities are referred to collectively as "ABSOLUTE".

2.  At all times relevant to this Information, Hedge Fund A was a small hedge fund based in Florida.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 15 2013

3. At all times relevant to this Information, Hedge Fund B was a small hedge fund based in New York City.

4. At all times relevant to this Information, Hedge Fund C was a small hedge fund based in New York City.

## THE SCHEME TO DEFRAUD

5. Beginning in or about late 2011, up through and including in or about May 2012, JASON KONIOR, the defendant, operated a Ponzi scheme whereby KONIOR misappropriated over $1.5 million in funds that he had solicited from at least three investor hedge funds. KONIOR falsely represented to these hedge funds that ABSOLUTE would provide up to nine times the amount of the investors' capital contribution. KONIOR claimed that he would place the combined funds (the additional funds to be provided by ABSOLUTE and the investors' capital) in a sub-account at a brokerage firm designated by ABSOLUTE. According to KONIOR, the investor hedge funds would then be able to trade securities as part of a "first loss" investment program utilizing that brokerage account. Instead, KONIOR misappropriated the funds provided to him by the investors for the purpose, among others, of paying redemptions to prior investors, making payments to himself, and paying various personal and business expenses.

## ABSOLUTE's "First Loss" Investment Program

6.  At all times relevant to this Information, JASON KONIOR, the defendant, through ABSOLUTE, purported to offer to investors a so-called "first loss" investment program. Among other things, KONIOR represented that ABSOLUTE provided trading leverage to new and emerging hedge funds. Hedge fund investors could purchase limited partnership interests in ABSOLUTE and, in return, ABSOLUTE would generally match their investments at a ratio of up to 9 to 1. That is, if a hedge fund were to invest, for example, $1,000,000 in ABSOLUTE, ABSOLUTE would contribute up to $9,000,000, thus yielding a potential total of $10,000,000 in capital. KONIOR claimed that those investment funds (the combined investment funds and additional capital provided by ABSOLUTE) would be placed in an ABSOLUTE sub-account at a brokerage firm that the hedge fund investor would manage on its own. The hedge fund investor then, subject to certain risk parameters, would be able to trade in the brokerage account at its own discretion. However, any trading losses in the sub-account incurred by the hedge fund investor would be entirely allocated to the hedge fund investor. To the extent there were trading profits, the hedge fund investor would typically receive between 50% and 70% of the profit, depending on the terms negotiated with ABSOLUTE, and ABSOLUTE would retain the remaining profit.

7. From in or about late 2011, up through and including in or about May 2012, Hedge Fund A, Hedge Fund B and Hedge Fund C each contracted with JASON KONIOR, the defendant, to participate in ABSOLUTE's "first loss" investment program and thereafter made investments in ABSOLUTE.

### KONIOR Defrauds Hedge Fund A

8. From in or about November 23, 2011 through in or about February 17, 2012, Hedge Fund A wired $500,000 to ABSOLUTE to participate in ABSOLUTE's "first loss" investment program. Those funds were wired from Hedge Fund A's bank account in Florida to a bank account held by ABSOLUTE in Manhattan (the "Absolute Account"). After receiving those wire transfers, JASON KONIOR, the defendant, diverted the funds provided to him by Hedge Fund A for unauthorized purposes, including paying redemptions to prior investors and making payments to himself. Nonetheless, KONIOR continued to make representations to Hedge Fund A that he was attempting to open a brokerage account with Hedge Fund A's funds.

9. On or about April 4, 2012, JASON KONIOR, the defendant, represented to the manager of Hedge Fund A that he (KONIOR) was opening a brokerage account at which Hedge Fund A could begin trading as part of the "first loss" investment program. However, as of on or about April 4, 2012, KONIOR already had diverted the funds provided to him by Hedge Fund A for unauthorized purposes.

10. On or about May 2, 2012, Hedge Fund A submitted a redemption request to JASON KONIOR, the defendant, for the return of its $500,000 investment. As of the date of the filing of this Information, no funds have been returned to Hedge Fund A.

### KONIOR Defrauds Hedge Fund B

11. On or about March 12, 2012, Hedge Fund B wired approximately $290,000 to JASON KONIOR, the defendant, in Manhattan to participate in ABSOLUTE's "first loss" program. Shortly thereafter, Hedge Fund B provided KONIOR with a check in the amount of $10,000 to complete Hedge Fund B's investment with ABSOLUTE. KONIOR advised the manager of Hedge Fund B that Hedge Fund B would be able to begin trading in a brokerage account established by ABSOLUTE by on or about March 15, 2012.

12. Beginning on or about March 12, 2012 and continuing through on or about March 14, 2012, KONIOR used the $300,000 in investment funds sent to him by Hedge Fund B, and most of the prior balance in the Absolute Account, to pay approximately $300,000 to prior investors in Absolute, approximately $6,000 to himself, and approximately $18,000 in other business expenses.

13. On or about March 21, 2012, Hedge Fund B sent JASON KONIOR, the defendant, a termination notice and sought to have its $300,000 investment returned. KONIOR called the manager of Hedge Fund B back in response. On that call, KONIOR claimed that the delay in setting up the brokerage account stemmed from his

attempts to open the account with a new brokerage firm. Thereafter, KONIOR made repeated claims that he was setting up a brokerage account for Hedge Fund B, but never in fact did so.

14. On or about April 2, 2012, the manager of Hedge Fund B sent a text message to KONIOR stating "I want my money back. What did you do to it anyway? Are you going to tell me or do you want the SEC to find out?" Later that same day, KONIOR responded to Hedge Fund B's manager via text message and wrote "[w]e have your funds in our acct. Where else would they be?" As of on or about April 2, 2012, KONIOR already had diverted the funds provided to him by Hedge Fund B for unauthorized purposes.

15. As of the date of the filing of this Information, Hedge Fund B's $300,000 investment has not been returned to Hedge Fund B.

### KONIOR Defrauds Hedge Fund C

16. Beginning in or about early 2012, the manager of Hedge Fund C had discussions with JASON KONIOR, the defendant, relating to Hedge Fund C's participation in ABSOLUTE's "first loss" investment program. Hedge Fund C ultimately decided to invest $700,000 in ABSOLUTE.

17. On or about April 11, 2012, Hedge Fund C wired $700,000 to JASON KONIOR, the defendant, in Manhattan. Thereafter, KONIOR used most of those funds to pay off prior investors, pay himself, and pay his business expenses. While

6

misappropriating those funds, KONIOR made numerous false representations to Hedge Fund C that he was attempting to open and fund Hedge Fund C's brokerage account.

18. On or about April 19, 2012, the manager for Hedge Fund C contacted one of the brokers whom JASON KONIOR, the defendant, previously had referred to in their discussions. The manager was informed that that broker no longer did business with KONIOR. Shortly thereafter, Hedge Fund C demanded that its funds be returned.

19. On or about April 19, 2012, in response to Hedge Fund C's demand, JASON KONIOR, the defendant, sent an e-mail stating that "I will turn around your funds ASAP." As of the date of the filing of this Information, KONIOR has not returned those funds to Hedge Fund C.

## Statutory Allegation

20. From at least in or about late 2011, up through and including in or about May 2012, in the Southern District of New York and elsewhere, JASON KONIOR, the defendant, willfully and knowingly, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing

such scheme and artifice, to wit, KONIOR caused at least three hedge funds, including one based in Florida, to wire funds to KONIOR in Manhattan in furtherance of the scheme set forth herein in which KONIOR represented to investors that he would establish brokerage accounts using those investors' funds when, in fact, KONIOR had misappropriated the funds to pay off, among other things, certain of KONIOR's prior investors.

(Title 18, United States Code, Sections 1343 & 2.)

## FORFEITURE ALLEGATION

21. As a result of committing the foregoing wire fraud offense alleged in Count One of this Information, JASON KONIOR, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the wire fraud offense alleged in Count One of this Information, including but not limited to the following:

### Money Judgment

a. At least a sum of money in United States currency that constitutes or was derived from proceeds traceable to the commission of the wire fraud offense alleged in Count One of this Information.

### Substitute Assets Provision

22. If any of the above-described forfeitable property,

as a result of any act or omission of the defendant:

    (i) cannot be located upon the exercise of due diligence;

    (ii) has been transferred or sold to, or deposited with, a third party;

    (iii) has been placed beyond the jurisdiction of the court;

    (iv) has been substantially diminished in value; or

    (v) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853(p);
and Title 28, United States Code, Section 2461.)

*[signature: Preet Bharara]*
PREET BHARARA
United States Attorney